and we'll turn to two cases that are related. United States v. John Sampson. We'll hear from Mr. Solomon. Go ahead. Good morning. May it please the court, Alex Solomon for the government. I've reserved two minutes for rebuttal. In this case, the district court's decision to hold as a matter of law that embezzlement as to all the funds and two escrow accounts had occurred six days after the defendant in this case filed his referee report with the King's County clerk's office was an improper intrusion into the role of the jury as fact finder. The jury should have been allowed in this case to determine when and if the defendant in this case demonstrated the intent to treat the funds contained in the two escrow accounts as his own. In this case, the surplus funds were due according to court order five days after the filing of referee report and the district court held that the embezzlement of all the funds in both accounts had occurred once the defendant was one day late, six days after the filing of the referee reports. Isn't there another way to look at her ruling? We have a whole period from the time of the deposit on both of the transactions until later in 2000s and up until 2008 in which periodic withdrawals were made. I mean the prosecution began in 2013. We count back five years. Before 2008, we wouldn't have to agree that it was on day six that the offense was complete, but certainly the conversion had happened by then and the district court was in position to say that no reasonable jury could have found that the conversion necessary for embezzlement wasn't complete and wasn't fully demonstrated by those withdrawals well before 2008. So taking that view of what the district court found, what's incorrect with that approach? Yes, your honor. Well, first of all, embezzlement is a specific intent crime and it would have been, from our view, improper for the judge to hold that as a matter of law there had been intent to steal all the accounts contained, all the money contained in the two accounts through, you know, whether it was being six days late. What I'm saying is if you construe her ruling as a finding that no reasonable jury could have found that there was not intent to exercise dominion and control over the two accounts collected by the periodic withdrawals. I mean, it looks like the defendant was treating each of these as an ATM machine. The monies were not deposited in the bank accounts that had been designated. It's true that they each had ref or receiver after his name, but there's nothing else that I could see in the record that suggested that there was any restriction on his usage. He had not complied with the obligation to withdraw after day five, but even recognizing that there may be a period of time in which negligence could be a reasonable explanation, the periodic withdrawals over the many years that passed until 2008 between the deposit of the funds suggests that he was exercising dominion control. He had converted the property to his own use and the district court was finding in essence that no reasonable jury could have found otherwise that all of the elements of embezzlement had been satisfied and that that was apparent on the face of the indictment. I'm having trouble understanding what's wrong with that analysis. Yes, well, first of all, Your Honor, that's a Rule 29 analysis, which would be appropriate after the jury has heard all the evidence. In this case, we strongly disputed that there had been a full proffer of all the relevant facts. In this case, I think it's helpful to look at the Duhamel case out of the District of Maine, in which a fiduciary put funds into escrow and then made checks to himself, both out of statute and in statute. And the court in Maine, the District Court of Maine, held that the, well, first of all, that each of the separate transactions in which the defendant had conveyed monies to himself to his own account or for cash were separate conversions. So that's one thing to keep in mind. And the second thing to keep in mind... I could see that if the fund initially he had not been controlling, but again, he deposited in a bank account that he wasn't authorized to deposit it in. And even the indictment says that between July 1998 and 2008, he embezzled these funds. And he was, you know, regularly withdrawing amounts starting in 1998, I think, for the Four Bell Street surplus account. So there was no way in which he was not exercising control over that money then. Yes, Your Honor. Well, I think, well, first of all, if you look at the 8th Avenue account, as of July 2006, when the defendant approached Abdul Ahmad and asked him for money so that he could He had only taken 20-something-odd thousand dollars out of that account, out of the 80,000. So... Why is that still not completing the crime? I mean, the money wasn't where it was supposed to be. He was supposed to have returned it. He was a lawyer aware of that obligation, and he was withdrawing the money. And the embezzlement was complete as of the time he converted it to his use. It's what he subsequently did with that helps establish that firmly. But wasn't, why wasn't the district court within her rights to determine that, based on the facts alleged in the indictment, no reasonable jury could find otherwise? Well, I think the no reasonable jury standard is a Rule 29 standard. I think if you look to the Sunia case from the District of Columbia, which talks about the reason why conversion or embezzlement is a specific intent crime. This was not the case, as was discussed in Sunia, where you had, for example, regular deposits, where into the defendant's personal account, you know, sort of automatic deposits. Each separate conversion involved a unique set of facts. For example, there were times when he transferred money to his account. There were times when he withdrew money for cash. You would say that a fact... Please go ahead. But in this case, couldn't a, let's treat it as a reasonable jury question for a moment. A reasonable jury on these facts might have, if it had gone to trial and the statute of limitations had been submitted to the jury, determined that the conversion was complete when the money was deposited into a different bank than was supposed to be used, right? If that was an effort to evade detection of withdrawals that he was already intending to make, wouldn't the conversion have been complete then? I think there could have been an argument that it would have been complete. But again, our problem was there was not a complete proffer of facts. For example, there was abundant evidence offered at trial that this was an incredibly sloppy lawyer. Secondly, it's worth keeping in mind that these funds were held in escrow. Even though he went to the wrong bank, they're fundamentally held for the benefit of the Kings County Courts Office. When you say held in escrow, the only designation is on the name of the account. It's John L. I forget what the other one was. But there's nothing that prevents him, except for that, that makes it unlike a personal account. It wasn't in the banks where it was supposed to be kept. It wasn't compliant with the court order in other respects. There's only in an abstract sense what was held in escrow because it was supposed to be held for the benefit of somebody else. But what else demarcates it is not having been converted. Well, I think the fact that when the defendant approaches Abdul Ahmad in July of 2006, he acknowledges that he has taken some funds that he had held in escrow and he'd like to replenish them. Does that mean that the remaining funds in escrow that he hasn't yet stolen from his mind have already been stolen? I would think as Judge Livingston's just suggesting that it, the facts fully support the conclusion that the conversion and the crime was complete early on after he deposited them in the bank where he wasn't authorized to deposit them and where he didn't return them. And particularly as confirmed early on in 1999, I guess that's what we're talking 1999-2000, when he began withdrawing funds from each of his accounts as if the whole fund was for his personal use. There's nothing other than your statement that they were in escrow that demarcates them as having been somebody else's funds. Sure, but there was also evidence adduced at trial showing that he in fact, when he did open these accounts that we characterize as escrow accounts, and on many occasions he did actually remit the funds from those accounts that he had held in escrow, which would indicate that he held them as a fiduciary rather than in his own... I'm sorry, he remitted them? So, sorry, so he, Mr. Sampson operated as a referee on approximately 20 occasions. I believe we introduced evidence of that effect at trial. And on at least 16 occasions, he properly remitted the funds. So we're focusing on what happened with respect to the two accounts here, the Eighth Avenue and the Fourville, right? Sure. My only argument is that when we're looking for intent, which we argue is fundamentally a jury issue, we can also look to how he treated other accounts. You know, for example, we didn't explore whether he had opened the other accounts with the incorrect financial institution and whether, you know, the proper conclusion to be drawn from the fact that he opened an account with the wrong bank meant that he necessarily meant to steal those. So in some instances, he deposited money into the wrong bank, a bank contrary to instructions, but then ended up remitting the funds on a timely basis. Yes. And these were all questions that, you know, that we could have presented to the jury and that the jury should have resolved rather than having the judge resolve this issue before trial. Is it true that some of the records were no longer around? Yes, some of the... Because of the time that had passed since the original deposit? Yes, some of the records... And the resolution. That was 1998 to 2013, right? I don't believe it was that long a time frame. For the 8th Avenue account, for which approximately 50-something thousand remained as of July 2006, there were some records missing, so we weren't able to ascertain whether Sampson had embezzled those monies up to that date, up to July 2006, or whether he had actually been making payments consistent with his duties as a referee. So I'm trying to understand the theory on which the indictment charges the embezzlement of the $82,000 plus on 2008. So looking at those 2006 events, there's $27,500 that has already been taken out of the account. There's $55,000 plus that remains in the account, and he withdraws it at that time and gets a check payable to Kings County. Yes. So the theory, the government's theory is that was not an act of embezzlement. He had not embezzled the $55,000 during the entire time it remained in his account. Right. And it was not embezzled when he took it out and got that check, because at the moment he did that, he was intending to remit? Correct, because the check was payable to the Kings County clerk. So when did the embezzlement of those funds take place? So our view is that the embezzlement took place in 2008 when he exchanged that bank check payable to the Kings County clerk for eight separate checks payable to John Sampson personally. That's when he demonstrated intent to use the funds affirmatively as his own. I'd like to follow up with some questions about cases on which you rely. Sure. The Maine case to which we referred, what is that? Duhamel, D-U-H-A-M-E-L. And what was the court? It was the District of Maine, Federal District Court. And then you also rely on some cases from the District of Columbia. There was SUNNIA, S-U-N-N-I-A. And I hope you'll forgive my, I don't know what we would call it, some kind of centrism, some sort of New York centrism. But I have a high regard for these courts on which you rely. But we in New York and in the Second Circuit, to put it simply, we have a lot of embezzlement here. Sure. I mean a lot of embezzlement. So as a practical matter, someone coming to your brief for the first time can't help but be struck by the fact that you have felt the need to roam over the legal landscape to find cases that support your interpretation. Whereas we are the engine of opinions, not just us, but the state courts of New York. What gives? Doesn't it strike you as a little odd that you don't have Second Circuit or authority, authority from respectable state courts in our circuit? Well, certainly it was for no effort, lack of trying. No, I have no doubt. You get A for effort. Thank you. We do rely, thank you. We do rely on the McCarthy case, which is a Second Circuit case, standing for the proposition that a conversion is complete once the defendant sent funds from escrow to his own personal account. And I think our It doesn't work for you completely, does it? I don't think it's dispositive on the point that we're arguing here. I think what I would simply argue, Your Honor, is that these are rather unusual facts, where you had a fiduciary who gradually over a period of time did an assortment of unusual things with respect to two accounts. Actually, it seems to me to be entirely usual. If you're talking about embezzlement and you're talking about New York. Sure. Sure. This is what one does to embezzle. So maybe not having firsthand knowledge as to embezzlers, I would have thought. You should have firsthand. That's your business. Sure. Embezzlement is your business, your only business. Okay. Thank you. Thank you.  If it pleases the Court, I'm Joshua Colangelo with Dorsey & Whitney, which represents Mr. Sampson. If I could just note as a threshold matter Mr. Solomon's argument that the government did not make a complete proffer of facts. That is entirely inaccurate. At the oral argument before Judge Irizarry, the government made the very same statement. Your Honor, we haven't proffered all facts. Judge Irizarry then allowed the government to make a supplemental submission of whatever those facts would be, which the government did, which Judge Irizarry properly found was irrelevant. So as to the proffer issue, that simply does not exist at this point. In terms of the fundamental argument that there is a jury question about embezzlements occurring in 2008, the government cannot take that position credibly now, in part based on its prior admissions. First, we have the charging instrument in this case, which says that embezzlements occurred in 1998 and 2002, respectively. Now, in 1998 and 2002, Sampson violated court orders and a statute by not depositing funds with the court. Instead, he kept those funds in banks other than those that the court directed him to use. Do you think the crime of embezzlement was complete on day six, or just merely at the court order? I think there are two ways to look at it. One is that if you look at Toosie, for example, and Irvine, which I'd be happy to discuss in greater detail, at the end of the period, in Toosie it was a five-day period in which you're supposed to act. If you don't act, you have committed the crime. In Irvine, they talk about it as a duty of an immediate payment and a refusal to comply with that duty. So certainly— That can't be right under the statute, right? If your client had forgotten to remit the funds so that on day six they're not remitted, we wouldn't say that the crime of embezzlement had been completed. Well, certainly the defendant in Toosie could have argued, Your Honor, I just—or to the jury, I forgot to register for the draft. I was busy with my comic books. You know, you can't hold that against me. But that does— Certainly, but I do think that there's an analogy. That brings, however, a different point up, which is the allegation is not that Mr. Sampson on the sixth day said, shucks, I forgot to deposit those funds. Let me do that now. In fact, the allegation as to Forebell is that between 1998 and 2008, when the government says the charged embezzlement occurred, there was no deposit at all. That's a 10-year period. As to Eighth Avenue, the funds were supposed to be deposited with the court in 2002, and in 2008, the government says no deposit had been made. So if we look back again at Irvine, which we submit supports the view that failing to comply with an immediate demand for payment constitutes the crime. It also speaks to a distinction between excusable delay and unreasonable delay. So here, within that time frame, certainly one would have to say that it became clear that the funds were being embezzled. Help me understand why it's not ultimately a jury question. Okay. So first of all, we have the charging instrument, which says that embezzlement occurred at the time when the only action was the violation of the court order, that it was not a matter of funds being withdrawn at all. And instead, those monies were held in accounts that the court didn't even know about. So contrary to Mr. Solomon's argument, we can't say those funds were legitimately held in escrow. Then, during the trial, the government said to the jury, quote, the defendant's lying and stealing began quite a while ago, the late 1990s, early 2000s, when he embezzled, stole hundreds of thousands of dollars from referee accounts that he controlled, close quote. Again, in the late 1990s and early 2000s, there are no withdrawals at all. It's only the failure to deposit money. Then, in two briefs to the district court— I'm sorry. I thought there were withdrawals from the two accounts in the late 1990s. No, Your Honor. Not until 2002? So as to the 8th Avenue account, the first evidence that we have of a withdrawal is in 2004. And as to the Four Bell account, the first evidence we have of withdrawal is 2007. Now, I would note, as to Four Bell, although the first withdrawal is in 2007, by the time we get to the charged crime, $60,000 or so of the $80,000 had been withdrawn, which I think underscores the point that the court was making earlier, that we also have these serial withdrawals during the period in which the court orders are being violated, which further establish intent, and presumably is why the government argued to the jury and the district court where it said all embezzlements were completed by 2006 and secured a charging instrument that tied the embezzlements to the failure to deposit funds. The facts are not disputed here. Sampson was a referee in two matters. The statute directed him to deposit funds within five days. The Kings County Supreme Court orders directed that the funds be deposited within five days. There were no deposits within five days. In fact, there were no deposits, as I said, for 10 years before the charged crime on Four Bell and six years on the charged crime in 8th Avenue. If we turn to the law and to respond further to the question of why there's no jury issue in 2008, U.S. v. Irvine, which I realize, Your Honor, is not a New York case but is a the court will indulge me in listening to a brief description of it. The attorney defendant there was charged with withholding funds from a client for five years after payment had been demanded. The Supreme Court said the crime was committed when there was a duty of immediate payment and, quote, a refusal to pay on demand without just excuse, close quote. The statute of limitations was two years. The charges were not brought for five years. The Supreme Court dismissed the charges. We could hardly have a more authoritative demand in this case than we do. We have a New York state statute and we have two court orders that set a very precise date certain as to when payment was supposed to be made. But there was a refusal to pay. And, in fact, that- The court order in the statute created a legal duty on your client's part to remit the funds, but I'm not sure that that constitutes a demand. In our view, a statute and a court order telling an individual to make a payment within a certain period of time has to have as much authority as a private party who is a principal telling an agent, I'd like you to make a payment as of a certain date. We don't- A demand that is outside the ordinary course. I mean, you described that and the government has described Mr. Livingston's case. According to this process, the funds get deposited. They're supposed to be returned at a certain time. But as Judge Livingston says, I see that as in the nature of a legal duty who's- If one overlooks it by a few days or ten days, that's different from declining to produce in response to an out of the ordinary request for payment. Someone calls and says, hey, you haven't paid. And he says, I'm not going to. That's something else rather than a failure to remit timely. I mean, evidence is, in my view, a level of consciousness of a failure to comply with a duty. Well, there's nothing to suggest that Mr. Sampson, who, as Mr. Solomon said, handled these matters often, was unaware of the statute or the court orders. And again, we would submit that directives that issue from a statute and from courts have to have as much effect as a directive that issues from a private party who asks her agent to do something. In Irvine, the Supreme Court said it would be unreasonable to prosecute this kind of case 20 years after the fact. Obviously, we're not talking about 20 years here. But as to Four Bell, the government is trying to prosecute 15 years after the statute and court orders required payment. As to Eighth Avenue, the government's trying to prosecute 11 years after the fact. I think it's critical to note that in Irvine, there is absolutely no discussion of withdrawals by the defendant or any other activity with funds by the defendant. That simply is not an issue. The issue is that he was directed to provide funds. He refused to do so. He continued to refuse to do so. But the court found that when he failed to respond to the demand, that's when the crime was committed. What do you make of the government's view that the Irvine case, in effect, has fallen into destitute? To quote the government's brief, it belongs to an ancient line of cases, et cetera, requiring as an element of the crime of a fiduciary's misappropriating funds from a fiduciary account that the victim of the alleged crime must have demanded payment from the judiciary? Well, I'm probably guilty of doing this myself, but I do think it's an old lawyer's trick that if there is a case that was issued many decades ago and you don't have a particularly good basis for distinguishing it, you just say, wow, that's really old. The fact that it's ancient and still on the books, if anything, underscores its viability. And again, we would address the issue of the demand by saying it's not as if Sampson had no obligation to remit these funds to the court. It's very clear that he was obligated to do that, both by the court orders and the statute. So to say, as the government does, that there's no demand in this case, I really think removes any meaning from the word demand. Am I right in understanding, though, that between 2002 and 2006, Mr. Sampson, the records show that Mr. Sampson made periodic withdrawals from both the 8th Avenue and the Four Bell Street accounts? We are missing records, which is a point I'd like to address in a moment. But what the records we have show is that by 2006, $27,500 had been withdrawn from the 8th Avenue account. The records show that by the time we get to the charged crime in 2008, approximately $65,000 had been withdrawn from that account, the lion's share of which was withdrawn in 2007. I'm sorry, no, no. $27,500 on 8th Avenue, and then as to Four Bell, by the time we get to the charged crime in 2008, something in the neighborhood of $65,000 had been withdrawn, most of which was withdrawn in 2007. So if, for example, we were not convinced that on day six the crime was complete, his withdrawals for personal use during this time period before 2006, before 2008, also reflect his use of the funds for his personal needs. Not only that, Your Honor, but if day six doesn't seem like an appropriate date, we also have to remember that by week six and month six, and in the case of Four Bell, year six, there had been no deposit with the court. Now, the government is very careful never to say that as a matter of law, there is no embezzlement on the sixth day, or in the sixth week, or in the sixth month, or in the sixth year. And we can all be fairly well assured that in a different case, if we got to the sixth week, or sixth month, or sixth year, the government would argue that an embezzlement had without respect to withdrawals. And so it is careful to try to preserve the flexibility to argue that in a subsequent case. But you can't have it both ways. If there's no defect as a matter of law in charging someone in the sixth month, then you can't say that the statute of limitations has not begun to run. And if we think about statute of limitations issues more broadly, to come back to a point that was raised earlier, one of the main purposes of a statute of limitations in a criminal case is to protect a defendant from claims based on stale evidence. Here, the government's theory is that no matter how long you hold this money, it's only  But we don't have banking records for Forbel from 1998 to 2003. We don't have banking records for 8th Avenue from 2002 to 2004. What if all the funds were withdrawn in those years and then put back? Even under the government's theory, that would mean the embezzlement occurred well before 2008. But we simply don't have those records. Another implication of the government's argument that there's no embezzlement absent of withdrawal is that a referee could just hold funds indefinitely for years without withdrawing them, without using them, and not commit a crime. If the referee died decades later and somebody else used those funds without knowing the source, presumably under the government's theory, there never would have been any crime at all. Again, we know that the government wouldn't really take that position in another case. Isn't the government trying to prevent against premature prosecution where negligence or someone's hospitalized? This isn't the case here. The mere failure in part of a routine bureaucratic transaction to remit doesn't establish necessarily a prosecutable crime. They're looking for something where there's been a clear reflection of an intent to take the money for oneself, to convert and use the money. And that's what each of those withdrawals reflects. Why isn't that a legitimate approach? Well, I won't comment on what the government's true motive here is, Your Honor. But to address that point, in Irvine, the court said, look, if you have some excuse, then potentially the crime hasn't been committed. But otherwise, when you fail to respond to the demand, the crime has been committed. In this case, this is plainly not a negligence case because funds were not remitted for the life of the period before the alleged crimes occurred. And again, ultimately, what the government never says is that it is not a crime as a matter of law if you fail to remit funds within these periods. Now, obviously, if the government prosecuted somebody on the sixth day or the sixth week or sixth month, the defendant might well argue inadvertence or negligence. Well, to get back to Judge Livingston's question, why isn't that for the jury to decide then? Because here we have a series of admissions. We have undisputed facts that these funds were not withheld for some short period of the demand, but rather for years, that during those years, funds were withdrawn. And we have Irvine and Toosie, which, as Supreme Court cases, stand for the proposition first that if you don't respond to that demand for payment and you can't come up with any excuse, you have committed the crime. And second, if a five-day period in which you're supposed to act expires and you have not acted, you have committed the crime. So given all of that— I'm curious about the government's admissions. Looking back at my notes, according to the government, it made representations at trial and in post-trial papers that your client had embezzled funds in the late 90s and early 2000s, if I'm reading this correctly, but it never represented that all the money had been embezzled by 2006. That is utterly false. There are two briefs submitted by the government to the district court in which it explicitly stated that the embezzlements were completed by July 2006. That's in the special appendix at page 27 at page 29. Moreover, it said to the jury that in the late 1990s and early 2000s, hundreds of thousands of dollars were embezzled. Well, that necessarily means all the money that was in those accounts. And the charging instrument, when it says there were embezzlements in 1998 and 2002, when there were no withdrawals at all, necessarily alleges that the embezzlement was based on the failure to pay. The failure to pay relates to all the funds. No subset of funds was treated differently from any other. Therefore, all the funds were embezzled at those times. Tell us about special appendix 27 and 29. What is it that we're supposed to find there? No, I'm sorry, supplemental appendix. Supplemental appendix. Forgive me. On page 27 of the supplemental appendix, at the bottom of the page, the very last sentence, it says, quote, instead, between approximately 1998 and July 2006, the defendant embezzled approximately $440,000 from ESCO accounts, et cetera, close quote. That $440,000 is the total that the government says was embezzled not only from these accounts, but from two other accounts that it cited evidence of for various purposes. And page 29? And on page 29, if we look at the second full paragraph on that page, and in that paragraph, the penultimate sentence, again, it says, quote, instead, between about 1998 and July 2006, the $440,000 was embezzled. The conclusion you draw from those two sentences is what? That consistent with the arguments made at trial to the jury, consistent with the charging instrument, the government is saying that the funds were embezzled not simply due to withdrawals, but because of the failure to pay. And obviously, when they're putting an end date of 2006, there hadn't actually been any withdrawal at all from the Forbel account. So that statement about embezzlement ending in 2006 is utterly inconsistent with the idea that, oh, you can only have an embezzlement if there's a withdrawal. Now, as to the question of the government's true motivation, as you called it, and as to which you expressed agnosticism or that took the Fifth Amendment, what should we make of that? Do you have anything to say on that question? I think that the government is being very careful to preserve its ability in another case to argue that if somebody wrongfully withholds funds for six years, but doesn't withdraw them, embezzlement can be charged. And also say, in this case, well, you need a withdrawal. And so holding the funds for six years, that doesn't really matter in terms of the embezzlement, which is the position it's taking now, contrary to all of the admissions. Those two positions can't exist simultaneously as a legal matter. All right. So we've given you a good deal of extra time. Now we'll hear from Mr. Solomon. Thank you, Your Honor. Who's going to set everything straight. Hopefully, Your Honor. Super quickly, three points. The first point, speaking to our motives. Our motives here are not to protect some unspecified case. Our motives here are to protect the jury as fact finder with respect to the issue of intent. Secondly, with respect to the issue of the two Supreme Court cases relied on by my colleague, Irvine and Toosie, Irvine is inapplicable. It is old. That's not our main argument. Our main argument is it doesn't apply here because we're talking about a different statute with different elements. There is no demand element in the embezzlement statute at issue here. Secondly, Toosie is inapplicable because, yes, it's a Supreme Court case, but it's dealing with enrollment for the draft, which is a strict liability crime. That is not the case here. The third point I'll be a little bit longer on, and that's our alleged misrepresentations or prior inconsistent representations to the court. I think it's useful to, if you can indulge me for 30 seconds with respect to some background. After Judge Irizarry dismissed our two embezzlement counts, we successfully moved to introduce evidence at trial of the embezzlements to show the defendant's motive to commit the alleged obstruction of case. So the evidence showed that as of July 2006, Sampson had embezzled a certain amount of money. I think it was approximately $440,000. He approaches Ed Ahmad, says, I have a problem. I've embezzled this money. I need to replenish the funds. Asks for a check. Ahmad gives him the check. The reason why our court, our filings, our Rule 29, Rule 33 filings deal with July 2006 is because that's the date when he has the conversation with Ed Ahmad and receives a $188,500 check from Ed Ahmad. So there was no, it simply was not the case that we were arguing to the jury or arguing to the court that all of the embezzlement had been complete as of July 2006. There was a very precise reason why we mentioned July 2006 in our briefs to the court. So what numbers, how do you add up to the $440,000? What are you attributing to 4 Bell Street and 8th Avenue as of that time period? I don't have the math in front of me, Your Honor, but there were four separate accounts that we introduced at trial. There were these two accounts. There were two other accounts from which he had embezzled funds. If you look at all those funds together as of July 2006. That's not my question. My question is what numbers were you relying on as to 4 Bell and 8th Avenue? I guess you don't know. Mr. Solomon. Yes. Feel free to consult with your colleagues. Sure. We operate like the inns of court. We, you know, the juniors and seniors can talk for a while. Go talk to him. The purpose of oral argument is not to entrap counsel. Go ahead. Thank you, Your Honor. I appreciate the indulgence. So my colleague informs me, and this is consistent with my memory, that the $440,000 did not include, $440,000 did not include the amounts that were still remaining in the 4 Bell and 8th Avenue accounts as of July 2006. It was only the balances that he had taken out. He had taken out. Yes. And finally, the defense relies on the case GAF, which stands, you know, to stand for the proposition to the extent there are prior representations made by the government that are inconsistent with its current stance, that the appropriate remedy is dismissal of the relevant charges. That's not what GAF stands for. GAF stands for, to the extent there are prior representations that are inconsistent, those representations must be presented to the jury. So if this court were to find that we made representations which were inconsistent where there are representations to this court, and we disagree with that,  and present our alleged prior misrepresentations to the jury. Yes. I've given you extra time, but why don't you conclude by telling us what exactly you want from us? What is your preferred decree of this court? We're seeking reinstatement of the two embezzlement counts. With what result? What happens after you achieve that victory? So that the defendant can be tried on these two accounts, and that the jury can determine whether he had intent to embezzle the funds as alleged in 2008. And that would require a trial on these counts, which would be an additional new trial. Yes, Your Honor. Okay. Wait, wait. Could I ask just one thing? The jury then would also be in a position to determine whether the crime was complete before the statute ran. Yes. I'm sorry to interrupt. Yes. Thank you. Thank you. Thank you very much. Thank you. We reserve decision on this. My apologies. Just because it's a factual issue. Go ahead. Take 30 seconds. Looking at page 37 of the government appendix, which is one of the many charging instruments, but this allegation remains the same in all. I'm sorry, are we in the supplemental appendix again? No, no. The government's appendix. Government's appendix. At page 37, paragraph 5. Yes. Which began since approximately 1998. The defendant John Sampson embezzled approximately $440,000 in funds from escrow accounts relating to foreclosure proceedings involving four Brooklyn real estate properties. This underscores that $440,000 is the total amount the government claims Sampson embezzled on all properties, including the two at issue here, and directly contradicts the idea that the government subtracted out from its submissions to the district court. What about paragraph 6? Irrelevant to all of this? It doesn't bear on the issue of what the $440,000 refers to and whether it includes all amounts in the Four Bell and Eighth Avenue account. Okay. Thank you very much.